OK, the next case is number 2011-12-29 ERGO LICENSING v. CAREFUSION Mr. Goggin, are you ready? Thank you, ma'am. May I please record? I'm Jim Goggin. I'm here on behalf of plaintiffs ERGO LICENSING and Dr. Holscher. The disputed term in this case is a programmable control means or control means in the two independent claims in the patent, which I should treat as meaning the same thing as did both experts in the case and both parties in the briefing below. These terms appeared in claims 10 and 18, the only two independent claims in the patent. Applying a 112-6 analysis, the court below found these terms to be indefinite for lack of structure in the specification. Since these terms were used in all the independent claims, the entire patent was thus invalidated. The issue for your review is whether sufficient structure was disclosed in the specification so that one skilled in the art of human factors engineering could understand the bounds of the invention claimed, and in particular here, that a programmable control means in the context of this invention is a computer. Now, let me talk briefly about the standards for how we make those determinations. Determinations of structure is not generally a high bar. Some structure is required, but you don't need to disclose details. But for computers and software, we have a really very thorough body of precedent, with Gummy MS Gaming all the way through to the recent Katz decision. And prior to Katz, one might have argued that if you don't have an algorithm, you're out of luck. But Katz came along and made it clear there are instances where a lack of algorithm won't doom you, but those are only instances where there isn't a need for any special programming. That's correct. So my question to you is, why isn't this a case where special programming is in fact necessary? Your particular functions are not just processing, not just the general functions described in Katz. So why isn't this outside of that exception? First of all, this is not a computer system. Invention is a rearrangement of known elements. It mentions a control device and other components like syringes and tubing, but no one has argued that we have to describe syringes and tubing because everybody knows what that is. In this case, in the cases you talk about where the court has required special programming, it's where the invention is a computer set up to do some kind of special programming, a special algorithm. Why isn't that exactly what this is, though? Because this is simply a known device. Hold on. Your expert said it could be any of three different things, if I remember right. Microprocessor, discrete circuits, or analog circuits. Those are very different ways of accomplishing the same thing. So why doesn't that demonstrate that it isn't... And that's precisely it. It's a general purpose computer. That's why many different computers can form this function. There's nothing special about this particular element in the invention. But not every general purpose computer would work, unless it's specifically programmed in some way that would make it work. Isn't that right? Well, let me try it a different way. I mean, I couldn't just go out and purchase all the things that are shown in the drawings and then just get myself a computer and plug it in and expect this to work, right? A general purpose computer, to one's skill to the art, would know what type of computer to buy. Our expert described those computers explicitly. Let me talk a little bit more about the algorithm. Let me talk about a more recent case that I think might help us. It's the Typhoon Touchscreen Technologies versus Dell case, which came out on November 4th. It's at 650F3-676. That involved a patent for a portable computer and touchscreen with a touchscreen and computer-employing screen. So what it was, a keyboard-less system where you could just touch the touchscreen and it would call up particular files or content. One claim involved data collection libraries to facilitate which content would be pulled up and involved a, quote, means for cross-referencing the responses to said inquiries with possible responses from said libraries. The district court held that to be indefinite for lack of a mathematical algorithm citing the... Well, I'm not familiar with this touchscreen case. Is this one of our cases? Yes, it is. And it came out after your briefing was completed? Yes, it came out November 4th. Did you file a supplemental authority so that you would put us on notice so I could have read it before your argument? I'm sorry, no, I did not. That would have helped in the future. Please try and do that because it's hard. You're representing to me what it says, but you're always going to put the best spin on it for, you know, your advocate. Yes, Your Honor. It would help in the future to do that. Judge Newman wrote the opinion. Well, so she might know that. You got one for free then. Anyway, the court discussed what is an algorithm, and an algorithm means broadly a series of instructions for the computer to follow or a step-by-step procedure for solving a problem or accomplishing some end.  like mathematically, as Your Honor was talking about, flow charts, or words. Computer code is not required to be included in the patent specification. In the court concluded on appeal, it suffices if the algorithm recites in prose the algorithm to be implemented by the programmer. So even in computer-implemented functions... Just like the algorithm that was expressed in Typhoon Touchscreens was memory stores a data collection application and has locations for storing data entered manually by touching the screen. The central processing unit of the computer executes the application and processes the manually entered data. That's very similar to the kind of disclosure that we have in our abstract. I would direct you to... First of all, the control device is disclosed as a structure probably three times in the patent. We cited that in our brief in the references to that. Another similar set of instructions is that the data input and data output are performed via the operating surface which has a data output circuit and a data input circuit. That's at column 2, lines 54-55. Page... column 3, line 25. It says the control device generates a control command by which the predetermined adjusting means is switched into the switched opposition. Another example would be at column 3, line 48. So your argument as I understand it is there may not be what we would traditionally view as an algorithm a chart that shows arrows from one block to the next but that the text of the specification vis-à-vis its disclosure of the functions nonetheless provides effectively an algorithm. That's correct. There's a broad meaning for algorithm and there's a narrow meaning. I think the narrow meaning would be the mathematical coding type of language. The broader meaning is this set of instructions that can be performed. We believe that... Let me back up a bit here. I just want to talk a minute about that standard of proof here. There's a presumption of validity for the patent here and the burden of proof is on the party challenging the patent. Typically that's been expressed as clear and convincing and other formulations of that have been where in the Exxon case it should be construed as indefinite only if the claim is insolubly ambiguous and a narrow construction... No narrow construction can properly be adopted. I don't think the court here even applied that presumption because if you will look in the addendum at page 13 the conclusion of the court after declaring the indefiniteness is that we've now done the first round of claim construction. I'd like the parties to file motions for summary judgment. I'd like the parties to tell me how they'd like to proceed with the scheduling order and the parties to tell me whether we should go on a rule in the Daubert motions. It was clear to me that the court did not understand that this ruling invalidated the patent and therefore we could not have applied the proper standard of proof. I'd like to address the... If indefiniteness is a question of law what relevance is the standard of proof? Standard of proof relates to evidence. Standard of proof relates to construction of the claim. That's a legal conclusion. It's a legal conclusion but it means that when you are interpreting a claim term with respect that may invalidate the patent you have to exercise every interpretation in favor of the patentee. It's not necessarily a... It's not the typical clear and convincing that you would apply to a fact but it is referenced throughout the jurisprudence that there is a higher standard that must be applied to invalidate the patent. Another formulation I think is that close questions are always decided in favor of the patentee finding claims indefinite only if all reasonable efforts prove futile and this again is in the context of cases where there is no fact per se. That's an issue. I'd like to address quickly... Here we don't have to surmise what one of ordinary skill in the art would understand because here we have actual expert testimony. I'm going to join appendix at 73. This is where Kierkegaard's expert is talking directly about the structure at page 95 lines... excuse me, 98 lines 5 through 15. He talks about, he's been asked to identify the structure and the specification. He says, he talks about a control device having a means for storing information in the line before that. The flow-adjusting means are connected to a central programmable control device which is located in the lower part of the chassis which permits the selected actuation of individual flow-adjusting means. He says, so that's a little bit more of a description of the structure of that. That shows that he is relating it specifically to the structure. It takes care of the problem that we had in Baya Bedina where the expert testimony was not related to the structure. I'd like to reserve my next minute and a half. Thank you. Alright, thank you Mr. Goggin. Thank you. Mr. Padachowski. Good morning, your honors, and may it please the court. My name is Stanley Padachowski and I represent the appellee CARE Fusion 303. Your honors, the district court's judgment should be affirmed because the asserted claims are indefinite. This court's decisions in Baya Bedina, Blackboard, and CATS, among others, compel this conclusion. In Baya Bedina, the claim term was control means for automatically operating valves, a very similar claim term to what we have here. The patentee pointed to the specification's disclosure of known differential pressure valving and control equipment as the corresponding structure. That's an even more specific disclosure than what we have here, and yet the court in that case found it insufficient to sustain the validity of the claims. The patentee in that case had actually pointed to prior art of record, an expert testimony that showed that one of skill in the art could identify the known control equipment that was intended to be used with the invention. But this court said that's not enough structure to render the claim definite. The inquiry is not whether one of skill in the art would be capable of implementing a structure that could practice the invention. The inquiry is whether one of skill in the art would understand the specification itself to disclose such a structure. And here, your honors, the claim is indefinite for the same reason. The specification itself does not permit one of ordinary skill in the art to determine what structure it is that the patentee intended to correspond to the claim term. Here, the applicants chose to use means plus function language in the claims. No one forced them to do this. They decided to take advantage of the statutory bargain that afforded them the convenience of means plus function claim terms. But in return, under the Patent Act and this court's precedence, the applicants were required to disclose sufficient corresponding structure in the specification. Here, the claim term is... What would have satisfied... You make much about the fact that there's no label on this box as if all they had to do on this box in the drawing was, say, control. Would that have been sufficient? Your honor, that would not have been sufficient. What else would be needed? It's difficult to say specifically what would be needed here precisely because it was the applicant's burden to inform the public, including us, what structure they intended to correspond to the claim means. It says computer means. It says you enter the control commands into that portion of the device. Certainly we aren't putting in the ones and zeros for the program. That is correct, your honor. So what line are you drawing? Your honor, the references that Ergo has made to things like generating control commands are simply more functional language used to describe the function of a control means. Of course, a control means is going to control something, but what precise structure is it that constitutes the control means? But, of course, a flowchart is really nothing more than a series of functional statements, and that has been recognized to be a sufficient algorithm, if you will, to disclose structure in a computer context. So why is the textual flowchart any different? Your honor, this press president has made clear that a textual flowchart is a permissible drafting technique for disclosing an algorithm. However, here we do not have any type of algorithm, whether expressed in a flowchart, a drawing, or text, that is going to inform the public. One, what type of device is it that constitutes a control device? Even Ergo's expert, at page 73 of the joint appendix, could not identify any kind of device that corresponded to the control means or control device that was mentioned in the patent. Second, there's no algorithm here that describes a step-by-step process for achieving a particular result. In Ergo's reply brief... You're speaking very broadly, that's why I asked. What would have satisfied your requirement? Because one of the things that comes through very clearly, at least to me, in the cases that reach us, is that these specifications are being drafted by the people who write patent applications in a style into which this fits very well.  We hear exactly the argument that you are presenting, and we decide the cases, some go one way, some go the other, depending on the degree of detail in trying to be judicial about it. And that's why I keep asking us, what more is involved? They say that this is what happens here. They mention all of the functions which are controlled by this control means. It seems to me that people who know anything at all about such devices, the computer implemented, would have no trouble at all in structuring, in programming such a control. And you say that the description here of the things which are controlled, which feed into the box number four, but that's not enough. It says what happens in that box. It says what comes out the other end, but you're telling us, and the district judge agreed with you, that that's insufficient. And so I would like to know what would be sufficient that's in accord with precedent, because our precedent has, in general, recognized the culture of how these applications are written, and that the alternative would be a five-foot shelf of specification. Your Honor, it is not possible for me to say concretely what type of disclosure would have been sufficient here, because I would simply be guessing. And the law of indefiniteness says the public should not be left  to guess that what you tell us that it's inadequate without telling us what would have been adequate makes it quite difficult. Your Honor, in general terms, this Court's precedents have made clear that if you identify a particular device with a well-known electronic structure, you do not need to give the details of the internal circuitry of that device. No, it has to be known to people in the field, experts in this field. That is correct, Your Honor. And here, the term control device used in the specification does not meet that standard. Both parties, experts... But there's more. It tells us what's controlled, what comes in, what goes out. It's on the flowchart. Your Honor, that doesn't constitute an algorithm for prescribing what steps you follow to get to a particular result. That functional language describes in very general terms what a control means or a control device might do. Exactly. So what sort of thing would satisfy the standard you think needs to be met? Your Honor, if the applicants had included a specific type of electronic structure where one of skill in the art could say, in reading that patent, I know what that term means and I know where to get precisely that type of component, that might be sufficient. However, in this case, Ergo's own expert, after suggesting three different possible ways that one might implement a control device, was asked, where do you find any of those in the specification? And Ergo's expert conceded at page 73 of the Joint Appendix that he could find none of those disclosures in the Joint Appendix. He doesn't have to if it's known to a person in the field. Your Honor, if it's known to a person in the field simply from their background knowledge, that is not enough to satisfy the law of indefiniteness because the law of indefiniteness makes clear that the applicants cannot simply use the background knowledge of one of skill in the art in order to fill a gap in the specification's disclosure. In this patent, the background describes a prior multi-channel system of which this is an improvement and the difference, as I understand it, between the prior system is sort of the placement of the switches and the controls and not necessarily the control device or the control system. If the specification had said something to the effect in column 5 that the control device 4 is the same kind of control device that was used and known in the prior art system described in the background of the invention, would that be enough? Your Honor, that likely would not be enough here under the Atmel case where this court said that you can't simply rely on the incorporation by reference of an article in order to find sufficient corresponding structure. In Atmel, the claim was found to be definite because the title of the article itself identified the corresponding structure that was enough to sustain the claims as definite. Here, even if you pointed to a prior art metering system and incorporated it by reference, that would not seem to qualify under this court's... So if the specification said control device 4 is Motorola model number 656, that would not be enough? Your Honor, that in general gets a lot closer to being enough. We would still need to know if that's something that was sufficient to perform the claim function. Here, even if there were a specific prior art device identified, we still wouldn't have enough information to know whether it's sufficient to perform the claim function, especially because here the applicants taught away from the prior art and they said that there are problems with the complexity of the prior art systems and the manner in which the menu screens are pulled. In general, in your examples, you are moving closer to a potentially sufficient disclosure, but those examples simply highlight the complete failure of the applicants here to disclose a structure. I'm sorry to interrupt you, but there are many, many patents that disclose things like amplifier connected to oscillator connected to demodulator, and those things are frequently just disclosed in block diagrams. Generally, those are always found sufficient to support a means-plus function recitation. Why is this different? Because you have a block here that says control device, whereas the examples I cited simply say amplifier, oscillator, or what have you. Your Honor, the difference here is because the record does not show that one of skill in the art could read the specification and know from the specification what particular kind of structure constitutes the control device. It is true that in cases like S3 with Selector or technology licensing as video standard detector and several other examples, that this court has found those types of examples to be sufficient disclosure. But in those cases, the court held that the record showed that those terms denoted devices with well-known electronic structures that one of skill in the art could say, yes, I know what that is and I can implement it. Here, both parties' experts said they could not tell from the specification what device was being taught to use. Ergo has adopted the construction that this control device is any programmable computer, any programmable control device suitable for use in a multi-channel infusion system. That alone, as we explained in our briefs, supports a judgment of affirmance here. However, you also have a problem with that because their own expert when asked are microprocessors disclosed in the specification said no. Ergo's expert had also mentioned discrete circuits attached to DC stepper motors and analog circuits as general possibilities for what one of skill in the art might use as a control device. And Ergo's expert was asked are any of those disclosed in the specification? And Ergo's expert responded no. That is the difference between this case where all the patentee did was substitute the generic term control device in the specification for the equally generic term control means in the claims and asked to be given unlimited claim scope for a disclosure that simply leaves the public to guess what exactly is it that the applicants are trying to claim here. What is the boundary of the invention? What types of devices will infringe or will not infringe? And that is all even before you get to the question of algorithm which is yet another independent defect in the disclosure here and another independent ground for affirmance. Your Honor, in Katz this court also made the distinction between situations where no special programming is needed and situations where special programming is needed. Here it is plain that special programming would be needed for a control means that controls the adjusting means. Under Katz there is not a credible argument to the contrary. For these reasons, Your Honor, we respectfully request that the court affirm the judgment of the district court. Thank you, Your Honor. Mr. Kagan, you have a little rebuttal time. First thing, Mr. Stankowski said that our patent was teaching away from the prior article. Actually, it was teaching away from the prior article not with respect to the control device but with respect to the placing of the switches. With respect again to the prior article, in this case the prior article control device was disclosed in the specification. The prior article, actually the European patent itself was submitted to the United States Patent Office. It's at Exhibit C to the plaintiff's claim construction brief docket number 140. It's referenced at joint appendix 49 on the docket sheet. Actually, the patent itself is right in the file wrapper and it discusses a programmable control means with the main processor system board and has a drawing that is quite detailed about how this would be accomplished. How do we know that the control device 4 is the control device of that prior art system? Where does the spec say that? I'll tell you. It's column 1, line 19 through 46. That's where the European patent is disclosed and discussed as a control device. Then there's no distinguishing that. Then they go in and say, now we're going to change it because we changed that invention, modified invention to move the switches around. There's nothing in the detailed description that specifically refers back and says the control device 4 of this invention is intended to be or is the control device disclosed in the prior article? No, not in there. Perhaps that was the intention of submitting the actual patent to the patent examiner. The final thing I want to say, I have 56 seconds. Judge Newman was asking, Care Fusion, what would you require? What would you have us require in this patent to make it meet all the requirements for patentability and validity? I just want to refer the court to footnote 3 on page 8 of our reply brief. Oops, I got the wrong thing there. I'm sorry. Is that on page 8 of the reply brief? No, that's not what I'm looking for, Your Honor. It's a citation to a patent that was filed by one of Care Fusion's predecessors.  by one of Care Fusion's predecessors. The patent is for a control means for controlling diffusion devices. It refers to control means. It has footnote 4. Thank you, Your Honor. Well, it does seem if they succeeded in validating your patent, they have probably invalidated yours. I'm sorry. The claims were drafted the same way, in means plus function format, referred to a programmable electronic means with a black box, and was granted by the Patent Office State. Okay. Thank you. Thank you. Thank you, Mr. Duggan, Mr. Panikowsky.